## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement (the "Agreement") is made in complete resolution of the lawsuit captioned *Chazman Hendrix v. The Tomal Corporation., et al.,* Case No. 1:122-cv-00601-TWT (the "Lawsuit"), currently pending in the United States District Court for the Northern District of Georgia, Atlanta Division, between Plaintiff Chazman Hendrix, and Defendant The Tomal Corporation.

This Agreement is made as a compromise between Plaintiff and Defendants (collectively, the "Parties") for the complete and final settlement of the claims raised by Plaintiff in the Lawsuit, including all Fair Labor Standards Act (the "FLSA") claims and claims for due but unpaid overtime compensation, liquidated damages, attorneys' fees, and litigation costs.

**WHEREAS,** Defendant employed Plaintiff from approximately on or about May 1, 2021 to on or about December 14. 2021;

**WHEREAS,** Plaintiff filed a Complaint against Defendant alleging failure to pay overtime pursuant to the Fair Labor Standards Act, as amended, (the "FLSA") in the United States District Court for the Northern District of Georgia, Atlanta Division, captioned *Chazman Hendrix v. The Tomal Corporation d/b/a Wildcat Striping and Sealing and John Campbell,* Civil Action No. 1:22-cv-00601 (the "Litigation");

**WHEREAS,** the Parties recognize the outcome in the Lawsuit is uncertain and achieving a final result through litigation requires additional risk, discovery, time, and expense;

**WHEREAS,** after balancing the benefits of settlement against the costs, risks, and delay of continued litigation, Plaintiff has agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement. Plaintiff believes the terms and conditions set forth in this Agreement are in his best interests and represent a fair, reasonable, and adequate resolution of the Lawsuit;

**WHEREAS,** Defendant denies any liability to the Plaintiff, and without admitting or conceding any liability or damages, and to avoid the burden, expense, and uncertainty of continuing the Lawsuit, Defendant has agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement; and

1

**WHEREAS,** the Parties desire to finally and forever resolve disputed matters between them that were or could have been raised in the Litigation existing as of the Execution Date of this Release;

**NOW THEREFORE,** the Parties, intending to be legally bound, and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

1. **Settlement Payments.** Provided that the Plaintiff executes this Release, Defendant shall pay Plaintiff the following "Settlement Payments":

    a. A check payable to Plaintiff in the total gross amount of Nine Thousand Five Hundred and 00/100 Dollars ($9,500.00) less appropriate deductions for federal and state taxes and social security, and for which Defendant will report to the IRS on a Form W2 which Defendant shall also deliver to Plaintiff;

    b. A check made payable to Plaintiff in the total gross amount of Nine Thousand Five Hundred and 00/100 Dollars ($9,500.00) without deduction and for which Defendant will report to the IRS on a Form 1099 indicating such payment as box 3 non-wage income and which Defendant shall also deliver to Plaintiff; and

    c. A check made payable to Kevin D. Fitzpatrick, Jr. as attorney for Plaintiff in the total amount of Eight Thousand Seven Hundred Fifty-Six Dollars and Forty-Five Cents ($8,756.45), for fees and costs, for which Defendant will report to the IRS on a Form 1099 indicating such payment as attorneys' fees and which Defendant shall also deliver to Fitzpatrick.

    The Settlement Payments shall be paid no later than ten (10) calendar days of the court approving the settlement. Plaintiff understands that Plaintiff's entitlement to and retention of the Settlement Payments are expressly conditioned upon his fulfillment of the promises in this Release. The Parties agree that the Settlement Payments shall constitute

2

full, final, and complete settlement of any wages, damages, monies, liabilities, or other obligations claimed to be owed to Plaintiff by Defendant.

2. **Acknowledgments**

   a. Plaintiff represents and warrants that Kevin D. Ftizpatrick, Jr. and Charles R. Bridgers and the firm of DeLong Caldwell Bridgers Fitzpatrick & Benjamin, LLC are and have been the sole attorneys for him with respect to the Litigation and all claims set forth therein; that no other attorney or law firm has any claim for legal fees, costs, and/or expenses relating to the Litigation; and that all legal fees, costs, and/or expenses for which Defendant could be liable in connection with the Lawsuit are discharged.

   b. Plaintiff acknowledges and agrees that Plaintiff has read and understands all the terms and conditions of the Release; that Plaintiff was not coerced, pressured or forced in any way to accept the terms of this Release; and that Plaintiff is entering into this Release knowingly and voluntarily, and without promise or benefit other than as set forth herein.

3. **Release.** In consideration of the foregoing, Plaintiff does hereby knowingly and voluntarily release and forever discharge Defendant, together with each of its corporate subsidiaries, parents, and affiliates, and its current and former partners, owners, shareholders, members, directors, officers, managers, employees, attorneys, consultants, contractors, servants, agents, insurers and spouses, together with their predecessors, successors, heirs and assigns (hereinafter collectively referred to as the "Releasees"), from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, contracts, torts, damages, attorney's fees, judgments, rights, claims, and demands whatsoever, in law or in equity (hereinafter collectively referred to as "Claims"), whether known or unknown, which Plaintiff ever had, now has, or may or might in the future have against Releasees (i) that were asserted in the Litigation; (ii) for unpaid wages; or (iii) that arise under or are related to the FLSA.

3

4.  **Court Approval.** The Parties will cooperate and take all steps necessary to effectuate judicial approval of their settlement. As may be required for the purposes of court approval and the subsequent enforcement of the Agreement, and for purposes of this Agreement only, Defendant agrees that Plaintiff will be treated as a "prevailing party" in the Lawsuit and, therefore, entitled to recovery of his attorney's fees and costs as set forth in Section 1 of this Agreement. If the Court does not approve this Agreement, the Parties will not be deemed to have waived, limited, or affected in any way any claims, objections, or defenses in the Lawsuit.

5.  **Dismissal.** If the Court approves this Agreement, and upon receipt of the Consideration set forth in Section 1 of this Agreement, the Parties will file with the Clerk of the Court, a Joint Stipulation of Dismissal With Prejudice.

6.  **Enforcement and Choice of Law.** This Agreement will be interpreted and enforced under the laws of the State of Georgia, without regard to its conflicts of law provisions, except where federal law applies. Counsel for both Plaintiff and Defendants participated in the negotiation and drafting of the provisions of this Agreement, and therefore, this Agreement shall not be construed in favor of one party or against the other.

7.  **Full and Complete Agreement.** This Agreement constitutes the entire agreement of the Parties concerning the subjects included herein. The Parties acknowledge and agree that, before entering into this Agreement, they have had sufficient time to consider this Agreement and consult with legal counsel of their choosing concerning its meaning. When entering into this Agreement, the Parties have not relied on any representations or warranties made by the other Parties, other than the representations and warranties expressly set forth in this Agreement. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before, or after, the Court's approval of this Agreement, shall be valid or binding unless approved by the Court and made in writing, signed by or on behalf of all of the Parties, and then only to the extent set forth in such written waiver, modification, or amendment.

4

8. **Binding Agreement.** This Agreement shall be binding upon, and inure to the benefit of, the Parties and their agents, employees, officers, directors, representatives, beneficiaries, heirs, executors, administrators, predecessors, successors, and assigns.

9. **When Agreement Becomes Effective.** This Agreement shall become effective upon its approval by the Court.

10. **Counterparts.** The Parties may execute this Agreement in counterparts and execution in counterparts shall have the same force and effect as if the Parties had signed the same instruments. The Parties agree that signed facsimiles (including electronic signatures) and .pdf copies have the same force and effect as originals. Each person executing this Agreement warrants and represents that such person has the authority to do so.

11. **No Admission of Liability.** Nothing contained in this Agreement is or shall be construed to be an admission by Defendant of any fault, liability or wrongdoing of any kind whatsoever, it being understood and agreed that any fault, liability or wrongdoing is expressly denied by Defendant.

12. **Survival of Provisions.** Should any provision of this Agreement be declared or determined by any court of competent jurisdiction to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement and all other valid provisions shall survive and continue to bind the parties.

13. **Knowing and Voluntary Agreement.**

    a. This Agreement is executed by the Parties knowingly and voluntarily and is not based upon any representations or statements of any kind by any person as to the merits, legal liabilities, or value of the Parties' respective claims.

    b. No promise or inducement has been offered or made except as

set forth in this Agreement. The Parties further acknowledge that consideration for this Agreement consists of the benefit of complete dismissal to which a Party or the Parties would otherwise have incurred costs and fees and bear the risk of an adverse judgment.

c. The Parties attest, certify, represent, and warrant that they are legally competent to execute this Agreement and that they have not assigned, pledged, or otherwise in any manner whatsoever sold or transferred, either by instrument in writing or otherwise, any claim, cause of action, or other legal right of whatever kind and nature, that they have or may have by reason of the claims released herein.

14. **Non-Disparagement.** Hendrix agrees that he will not make any knowingly false oral or written communication to any person or entity – governmental or otherwise – including any social media, blog, internet postings, cyber-postings, emails, or by any other mechanism by which The Tomal Corporation or any future business entity may be reviewed which disparages the reputation of the other party, nor will Hendrix cause any third party, or attempt to cause any third party, directly or indirectly, to make any such oral or written communication. Hendrix expressly agrees not to solicit, encourage, or otherwise cause any such communication to be made by any individual not bound by the terms of this Agreement. Nothing in this provision prevents Hendrix from providing truthful information about the Tomal Corporation in response to a court order or subpoena or during any federal, state, or local governmental body investigation.

**IN AGREEMENT HERETO,** Hendrix, and the below representative of The Tomal Corporation set their hand and seal.

**Chazman Hendrix**

_[DocuSigned by: /s/ _____ 37035D833FB44EE]_

Date: April 18 , 2022

**The Tomal Corporation d/b/a Wildcat Striping and Sealing**

By: *Laura A. Dunn* Vice President Tomal Corp Wildcat Striping & Sealing

Its: _____

Date: April *19*, 2022